**Terry J. INGRAM, Plaintiff**

v.

**RENCOR CONTROLS, INC., Defendant**

**No. CIV.02–058–P–C.**

United States District Court,
D. Maine.

July 30, 2002.

Timothy J. Bryant, Esq., Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, ME, for Terry J. Ingram, plaintiff.

Daniel J. Mitchell, Esq., Bernstein, Shur, Sawyer, & Nelson, Portland, ME, John T. Casey, Jr., Esq., Albany, NY, for Rencor Controls Inc, defendant.

## ORDER AFFIRMING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

GENE CARTER, District Judge.

The United States Magistrate Judge having filed with the Court on June 25, 2002, with copies to counsel, his Recommended Decision on Defendant's Motion to Dismiss (Docket No. 11); and Defendant having filed its objection thereto on July 15, 2002, (Docket No. 12), to which objection Plaintiff filed his response on July 26, 2002 (Docket No. 13); and this Court having reviewed and considered the Magis-

trate Judge's Recommended Decision, together with the entire record; and this Court having made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision, and concurring with the recommendations of the United States Magistrate Judge for the reasons set forth in his Recommended Decision, it is **ORDERED** as follows:

(1) Defendant's objection is hereby **DENIED**;

(2) The Recommended Decision of the Magistrate Judge is hereby **AFFIRMED**;

(3) Defendant's Motion to Dismiss is hereby **GRANTED** as to Count IV and those portions of Counts I and III that seek recovery of a bonus or are based on an alleged oral agreement reached in 1994, and it is otherwise **DENIED**.

The following claims set forth in the Amended Complaint remain viable:

(a) the claim for stock set forth in Count I based on an alleged oral agreement reached in 1998;

(b) the claims in Count II; and

(c) the claim for stock set forth in Count III.

*MEMORANDUM DECISION ON PLAINTIFF'S MOTION TO DISREGARD AND RECOMMENDED DECISION ON DEFENDANT'S MOTION TO DISMISS*

COHEN, United States Magistrate Judge.

The defendant has moved to dismiss the complaint in this action arising out of an employment relationship. The plaintiff has filed a document entitled "Plaintiff's Notice of Objection to Affidavit and Motion to Disregard Inadmissible Evidence" (Docket No. 9), which I construe as a motion to strike the Affidavit of Sheila M. Herlihy and the exhibits attached thereto (Docket No. 8) filed by the defendant in support of its argument that New York law applies to its motion to dismiss. I deny the motion to disregard and recommend that the court grant the motion to dismiss in part and deny it in part.

### I. Factual Background

The plaintiff makes the following relevant factual allegations in his amended complaint.

The plaintiff, a resident of Maine, accepted employment with the defendant in 1994. Plaintiff's First Amended Complaint and Demand for Jury Trial ("Complaint") (Docket No. 6) ¶¶ 1, 11. The defendant is a New York corporation with a principal place of business in Fort Edward, New York. *Id.* ¶ 2. The defendant sells commercial valves to the pulp and paper industry. *Id.* ¶ 8. In 1994, Patrick Herlihy and Corey Simpson were the sole shareholders of the defendant corporation. *Id.* ¶ 8. Early in 1994, Herlihy and Simpson approached the plaintiff, then employed as valve sales manager for a corporation in Maine, about coming to work for the defendant. *Id.* ¶¶ 9–10. The plaintiff was then being paid salary and benefits amounting to approximately $100,000 per year. *Id.* ¶ 10. In or around October 1994 the defendant hired the plaintiff as an outside salesman. *Id.* ¶ 11.

When the plaintiff was hired, it was agreed by Herlihy, Simpson and the plaintiff that the plaintiff would initially be paid a salary of $60,000 per year until he proved his commitment to the defendant, with the expectation that his salary would increase as sales grew. *Id.* ¶ 12. It was also agreed that if the plaintiff was able to generate sustained sales increases for the defendant's Maine territory using less manpower, he would be paid compensation in the form of 10% of the defendant's

stock, to be paid out over a period of five years. *Id.* ¶ 13. Over the next three years the defendant's sales in Maine grew despite a reduction in its sales force, but the plaintiff's base salary did not increase. *Id.* ¶ 15. In or around September 1997 Simpson resigned from the defendant. *Id.* ¶ 16.

After Simpson resigned, Herlihy asked the plaintiff if he was going to continue to work for the defendant. *Id.* ¶ 17. The plaintiff told Herlihy that he did not want to stay because the defendant had not fulfilled its promises to increase his salary and provide him with stock. *Id.* Herlihy responded by offering to increase the plaintiff's salary to $100,000 per year, promote him to vicepresident and transfer 10% of the defendant's stock to him "as compensation for his past sales performance and willingness to remain with the Company." *Id.* ¶ 18. The plaintiff accepted these terms in or around January 1998. *Id.*

Over the next three years the defendant's sales in Maine expanded "dramatically," but the defendant did not provide the plaintiff with the promised stock. *Id.* ¶ 19. At the end of every year after January 1998 the plaintiff was told by Herlihy that although he had earned the stock, the transfer could not take place until a legal dispute with Simpson was resolved and various other tax and accounting problems were addressed. *Id.* ¶ 20. Based on repeated verbal and written assurances that Herlihy intended to honor the promise to provide the plaintiff with 10% of the defendant's stock, the plaintiff continued to work as vice-president for the defendant. *Id.* ¶ 21.

In early 2000 the plaintiff told Herlihy that he was going to leave the company if Herlihy did not begin the process of transferring 10% of the defendant's stock to him. *Id.* ¶ 22. Herlihy responded by rais-ing the plaintiff's salary to $125,000 per year, "promising future bonus compensation based upon the net profits of the Maine operation," and reiterated his promise to transfer the stock. *Id.* The parties agreed that the plaintiff would accrue a bonus for 2001 to be paid out as part of his regular paychecks in 2002 if the plaintiff was able to maintain 2000 sales revenues during 2001 with a reduction in sales staff. *Id.* ¶ 23. The plaintiff increased sales revenues in 2001 over 2000 with a reduction in his sales force. *Id.* ¶ 26. In October 2001 the plaintiff "again confronted Herlihy about the unpaid stock compensation" and Herlihy "again promised to effectuate the transfer of stock" to the plaintiff. *Id.* ¶ 24. The plaintiff's "bonus expectation for the 2001 year ... amounts to $25,000." *Id.* ¶ 27. The defendant has not transferred the stock to the plaintiff and has refused to pay the 2001 bonus. *Id.* ¶¶ 25–26. The plaintiff resigned on or around January 30, 2002. *Id.* ¶ 28.

## II. The Motion to Strike

The defendant contends that its motion to dismiss must be decided under New York law, although it also takes the position that the result would be the same under Maine law. Defendant's Memorandum of Law in Support of Motion to Dismiss Complaint ("Motion to Dismiss") (Docket No. 4) at 4–6. In support of its position, the defendant submitted the affidavit of Sheila M. Herlihy, its vice-president, secretary and treasurer, to which three exhibits are attached. Affidavit [of Sheila M. Herlihy] ("Herlihy Aff.") (Docket No. 8) ¶ 1 & exhibits. The plaintiff "objects to the Affidavit and its associated exhibits as evidence and requests that the Court disregard those materials in their entirety." Motion to Strike at 1. He contends that the court may only consider the allegations in the complaint and "matters of which the judge may take judicial no-

tice" in connection with a motion to dismiss. *Id.* at 1–2. He suggests that consideration of any other materials would require that the motion be converted into one for summary judgment and asserts that "[t]here is not justifiable basis for conversion in the present action." *Id.* at 2. He also argues that the affidavit is unreliable because it is not made on personal knowledge and provides no factual basis for its statements. *Id.* Finally, he contends that the exhibits attached to the affidavit are inadmissible hearsay. *Id.*

 While a motion to dismiss invoking Fed.R.Civ.P. 12(b)(6) must be evaluated primarily by considering the allegations of the complaint, the act of determining what law must be applied to those allegations is not and cannot be limited to those allegations. "A federal court which exercises supplemental jurisdiction over state-law claims based on diversity jurisdiction must apply the choice-of-law rules of the state in which it sits." *Ashmore v. Northeast Petroleum Div. of Cargill, Inc.,* 843 F.Supp. 759, 772 (D.Me.1994). Maine law, which provides the rules to be applied in this case, requires a court to consider

> what state has the most significant relation with respect to a specific issue in dispute, including the following contacts to the extent that they are relevant to the issue: (1) place of contracting; (2) place of negotiation; (3) place of performance; (4) where the subject matter of the contract is located; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties.

*Id.* at 773 (citation omitted). *See Baybutt Constr. Corp. v. Commercial Union Ins. Co.,* 455 A.2d 914, 918 (Me.1983), overruled on other grounds by *Peerless Ins. Co. v. Brennon,* 564 A.2d 383, 385–86 (Me.1989).

The defendant, which takes the position that its motion to dismiss must be addressed under New York law, must be allowed to present evidence on these factors without turning the motion to dismiss into one for summary judgment, as was done in *Ashmore. See also* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1364 n. 26 (2d ed.1990) (listing cases using affidavits in connection with motions to dismiss under Rule 12(b)(6)). Otherwise, an artful plaintiff could prevent a court from determining whether his action should proceed under the state law that should be applicable to his claim merely by omitting certain facts essential to the choice-of-law issue from his complaint.

An affidavit is required to be made on personal knowledge only when it is presented in support of a motion for summary judgment. Fed.R.Civ.P. 56(e). The Herlihy affidavit provides sufficient background information to make its factual assertions reliable. I do not rely on any legal argument or conclusions set forth in the affidavit. The affidavit also provides sufficient evidence that Exhibit A is a public record, Herlihy Aff. ¶ 2, and accordingly not hearsay, Fed.R.Evid. 803(8). While it is likely that Exhibits B and C are records of the defendant's regularly conducted business activity and thus not hearsay, Fed.R.Evid. 803(6), the affidavit does not provide sufficient foundation for that conclusion. I will not consider those exhibits in connection with my analysis of the motion to dismiss. In all other respects, the motion to disregard the affidavit and its exhibits is denied.

### III. Motion to Dismiss

#### A. Applicable Legal Standard

 The motion to dismiss invokes Fed.R.Civ.P. 12(b)(6).[1] "When evaluating

---

1. The motion itself (Docket No. 3) invokes Rule 12(b)(6). The memorandum of law sup-

a motion to dismiss under Rule 12(b)(6), [the court] take[s] the well-pleaded facts as they appear in the complaint, extending the plaintiff every reasonable inference in his favor." *Pihl v. Massachusetts Dep't of Educ.*, 9 F.3d 184, 187 (1st Cir.1993). The defendant is entitled to dismissal for failure to state a claim only if "it appears to a certainty that the plaintiff would be unable to recover under any set of facts." *Roma Constr. Co. v. aRusso*, 96 F.3d 566, 569 (1st Cir.1996); *see also Tobin v. University of Maine Sys.*, 59 F.Supp.2d 87, 89 (D.Me.1999).

## B. Choice of Law

The defendant contends that this court must apply New York law to his motion to dismiss under Maine's "most significant relationship" test. Motion to Dismiss at 4–6. The plaintiff responds that this test requires the application of Maine law. Plaintiff's Opposition to Defendant's Motion to Dismiss ("Plaintiff's Opposition") (Docket No. 5) at 3–5. Because my recommended decision is the same under Maine law and New York law as to those issues for which a choice of applicable law must be made, I need not resolve this dispute. I will cite to the case law of both jurisdictions in the following analysis.

## C. Count I

Count I alleges breach of contract. Complaint ¶¶ 29–34. The defendant argues that any breach-of-contract claim is barred by the statute of frauds. Motion to Dismiss at 6–9.

> It is well established that affirmative defenses, such as the failure of a contract sued upon to satisfy the statute of frauds, may be raised in a motion to dismiss an action for failure to state a

claim. However, it is equally well settled that, for dismissal to be allowed on the basis of an affirmative defense, the facts establishing the defense must be clear on the face of the plaintiff's pleadings. Furthermore, review of the complaint, together with any other documents appropriately considered under Fed.R.Civ.P. 12(b)(6), must leave no doubt that the plaintiff's action is barred by the asserted defense.

*Blackstone Realty LLC v. FDIC*, 244 F.3d 193, 197 (1st Cir.2001) (citations and internal quotation marks omitted).

Under Maine law,

> [n]o action shall be maintained in any of the following cases:
>
> \* \* \* \* \* \*
>
> **5. Agreement not to be performed within one year.** Upon any agreement that is not to be performed within one year from the making thereof;
>
> \* \* \* \* \* \*
>
> unless the promise, contract or agreement on which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith, or by some person thereunto lawfully authorized . . . .

33 M.R.S.A. § 51. The applicable New York statutory provision provides, in relevant part:

> Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking: 1. By its terms is not to be performed

porting the motion (Docket No. 4) erroneously cites Rule 12(b)(4), which deals with insufficiency of service of process. It is clear from the body of the memorandum that the defen-

dant's argument is based on a claim that the amended complaint fails to state a claim on which relief may be granted, the subject matter of Rule 12(b)(6).

within one year from the making thereof
. . . .

N.Y. General Obligations Law § 5–701(a) (McKinney 2001).

■■ The only breach of the October 1994 oral agreement set forth in the amended complaint is a "failure to pay Ingram his earned compensation in the form of 10% of Rencor stock." Complaint ¶¶ 11–13, 19, 25, 28. By its terms, that oral agreement is alleged to have required the defendant to "pay out" to the plaintiff 10% of Rencor's stock "over a period of five years." *Id.* ¶ 13. To the extent that the plaintiff seeks to recover for an alleged breach of the October 1994 oral agreement, his claim is clearly barred by the statutes of both states quoted above. The plaintiff argues that the statute of frauds does not bar his claim because "there is no allegation whatsoever in the Complaint in which Ingram concedes that his right to receive compensation in the form of stock was dependent upon his performance or continued employment over any specific timeframe," Plaintiff's Opposition at 5, suggesting that he could have completed the required performance over a six or eight month period, *id.* at 6 n. 2, and because the defendant "obviously had the option of making that payment to him immediately after he accrued the right to receive it," *id.* at 6. Neither of these arguments saves this claim. It is the time set for performance by both parties to the oral agreement, not just for one, that governs under the respective state statutes. *See, e.g., Longcope v. Lucerne–In–Maine Cmty. Ass'n,* 127 Me. 282, 284, 143 A. 64 (1928); *Martocci v. Greater New York Brewery,* 301 N.Y. 57, 92 N.E.2d 887, 889 (1950) ("The endurance of defendant's liability is the deciding factor."). The time set for the defendant's performance, by the terms of the complaint, was five years. Whether the defendant could choose to perform within a year instead of over the five-year period specified makes no difference; such an interpretation would allow most, if not all, oral contracts in which performance over a period longer than a year is specified to be taken outside the statute of frauds. *See Longcope,* 127 Me. at 284, 143 A. 64 ("Some authorities hold that mere possibility of literal performance within a year removes the bar of the statute. Such is not the law in this jurisdiction.").

■ Perhaps recognizing this infirmity in his claim, the plaintiff makes several alternative arguments. First, he contends that the alleged oral agreement entered into in January 1998, Complaint ¶ 18, was a separate agreement under the terms of which the defendant was to provide him with the stock immediately, taking the agreement outside the statute of frauds, Plaintiff's Opposition at 7.[2] The new agreement was made "in exchange for a promise of forbearance from Ingram" and was conditioned on his "willingness to remain with Rencor." *Id.* at 7–8. Contrary to the defendant's argument, Motion to Dismiss at 8, the terms of the 1994 agreement as alleged in the amended complaint did not require the plaintiff to remain employed by the defendant for five years in order to be entitled to the stock, so his willingness to remain on the job in January 1998 was not necessarily a modification of the initial agreement nor was the alleged second agreement necessarily without consideration, for purposes of analysis of the amended complaint in connection with a motion to dismiss. While the amended complaint may accordingly be construed to avoid the bar of the statute of frauds as to

---

2. The plaintiff does not make this argument regarding the oral agreement alleged to have been entered into by the parties "[i]n early 2000." Complaint ¶ 22.

the alleged second agreement, the defendant also contends that forbearance is insufficient consideration under New York law, making the alleged second agreement unenforceable. Defendant's Reply to Plaintiff's Opposition to Motion to Dismiss ("Defendant's Reply") (Docket No. 7) at 3. Although it cites no Maine case law, the defendant's reply can reasonably be interpreted to assert that the same is true under Maine law. *Id.* at 1 n. 1. However, in both Maine and New York forbearance may provide sufficient consideration to support a contract. *Zip Lube, Inc. v. Coastal Sav. Bank,* 709 A.2d 733, 735 (Me. 1998); *Richman v. Brookhaven Serv. Corp.,* 80 Misc.2d 563, 363 N.Y.S.2d 731, 733–34 (1975). To the extent that Count I seeks the stock based on the alleged 1998 agreement, the defendant is not entitled to dismissal.

This conclusion makes it unnecessary to consider the plaintiff's other arguments concerning his claim to the stock. The only aspect of Count I remaining for discussion is the plaintiff's claim for a bonus, based on the alleged oral agreement of "early 2000." Complaint ¶¶ 22–23, 26–27. The defendant contends that this claim is barred by the statute of frauds because the terms of the alleged agreement provided that the bonus, earned during 2001, was to be paid out in weekly increments during 2002, over a year after the agreement was entered into. Motion to Dismiss at 9–10. It also argues that the plaintiff forfeited his right to a weekly paycheck in 2002 when he resigned from his employment with the defendant, thereby forfeiting his right to the agreed-upon weekly payment of the bonus. *Id.* at 10. Specifically, the amended complaint alleges that the terms of this agreement were as follows:

Ingram would accrue a bonus for 2001, to be paid out as part of his regular paychecks in 2002, if Ingram was able to at last maintain 2000 sales revenues during 2001 with a reduction in sales staff. The amount of the bonus would depend on net profits and the overhead costs for the Maine operation during 2001.

Complaint ¶ 23. In response, the plaintiff contends that "Ingram's right depended on the results of sales over a single calendar year and nothing more," Plaintiff's Opposition at 11, but this creative description of the alleged agreement cannot take it outside the statute of frauds because the defendant's performance was not to be completed, by the terms of the agreement, within a year of the making of the contract. The plaintiff argues in the alternative that this agreement is taken outside the statute of frauds by the doctrines of part performance and promissory estoppel. *Id.* at 9–12. He does not respond to the defendant's argument concerning anticipatory breach.

▋ Under Maine law, an employee may not avoid the statute of frauds based solely upon his detrimental reliance on an employer's promise. *Stearns v. Emery–Waterhouse Co.,* 596 A.2d 72, 74–75 (Me. 1991).[3] The Law Court rejected promissory estoppel and part performance as a basis for avoiding the statute of frauds in the context of employment contracts. *Id.* To the extent that the plaintiff contends that he is entitled to proceed under a distinct theory of equitable estoppel, Plaintiff's Opposition at 12, the amended complaint fails to allege both fraudulent conduct by the defendant and a detrimental reliance by the plaintiff, both of which are

**3.** I find the plaintiff's attempt to distinguish *Stearns,* Plaintiff's Opposition at 12 n. 3, unconvincing. While the plaintiff here is not seeking to compel the defendant to continue to employ him, he is seeking to enforce the terms of an alleged oral employment agreement. That similarity is sufficient to make the holding of *Stearns* fully applicable here.

necessary elements of such a claim under Maine law.[4] *Chrysler Credit Corp. v. Bert Cote's L/A Auto Sales, Inc.,* 707 A.2d 1311, 1318 (Me.1998); *Forest City Chevrolet v. Waterford of Portland, LLC,* 180 F.Supp.2d 234, 235 (D.Me.2002). In New York, promissory estoppel that will bar application of the statute of frauds requires an allegation of unconscionable circumstances, *Swerdloff v. Mobil Oil Corp.,* 74 A.D.2d 258, 427 N.Y.S.2d 266, 269–70 (2d Dep't 1980), which cannot reasonably be said to have been alleged here with respect to the contemplated bonus. New York law requires that the acts designated by a plaintiff as part performance that will avoid application of the statute of frauds be "unequivocally referable" to the alleged oral promise. *Nelson Bagel Bakery Co. v. Moshcorn Realty Corp.,* 289 A.D.2d 69, 734 N.Y.S.2d 134, 135 (1st Dep't 2001). This means that the actions at issue must be "explainable only with reference to the oral agreement." *James v. Western New York Computing Sys., Inc.,* 273 A.D.2d 853, 710 N.Y.S.2d 740, 742 (4th Dep't 2000). Here, where the plaintiff alleges that his performance with respect to the bonus consisted of "increas[ing] sales revenues in 2001 above those in 2000 with a two-person reduction in his salesforce," Complaint ¶ 26, the action at issue may be explained without reference to the alleged oral agreement that he would be paid a bonus. The plaintiff, by the terms of the amended complaint, was paid $125,000 in 2001 to sell the defendant's product. Complaint ¶¶ 14, 22. The defendant could well have increased sales revenue with a reduced staff due to factors independent of the plaintiff's efforts, or the plaintiff could have performed his job well without the promise of a bonus, as the complaint indi-

cates he had done in the years before he was allegedly offered a bonus. Complaint ¶ 19. Under New York law, when an act is "equally consistent with an explanation having a basis in other than the alleged oral agreement, the part performance relied upon will not remove the agreement from the bar of the statute of frauds." *Cunnison v. Richardson Greenshields Secs., Inc.,* 107 A.D.2d 50, 485 N.Y.S.2d 272, 276 (1st Dep't 1985) (noting also that part performance of an oral contract for employment not to be performed within a year does not remove the contract from the operation of the statute of frauds). The defendant is entitled to dismissal of that portion of Count I that seeks payment of the bonus.

## D. Count II

Count II alleges unjust enrichment. The defendant contends that it cannot be enriched by retaining its own stock and that the plaintiff's claim for a bonus is barred by his resignation before the bonus could be paid out over 2002 in accordance with the terms of the alleged agreement. Motion to Dismiss at 10–11. The plaintiff responds that he has alleged that the defendant was enriched by "withholding monies repeatedly promised to him and which Herlihy agreed he had fully earned." Plaintiff's Opposition at 13.

Under Maine law, there are three elements to a claim for unjust enrichment:

[One] a benefit conferred upon the defendant by the plaintiff; [two] an appreciation or knowledge by the defendant of the benefit; and [three] the acceptance or retention by the defendant of the

4. The amended complaint does allege that the defendant expected or should have expected the plaintiff to rely on its promise by "foregoing other employment opportunities" and that

he did so rely, Complaint ¶¶ 47–48, but there is no allegation that this reliance was in any way economically detrimental to the plaintiff.

benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.

*Aladdin Elec. Assocs. v. Town of Old Orchard Beach*, 645 A.2d 1142, 1144 (Me. 1994) (citation omitted). The theory "describes recovery for the value of the benefit retained when there is no contractual relationship." *Id.* at 1145 (citation omitted).[5] Under New York law, a plaintiff alleging unjust enrichment must show that

(1) defendant was enriched (2) at plaintiff's expense, and (3) that it is against equity and good conscience to permit defendant to retain what is sought to be recovered.

*Albrechta v. Broome County Indus. Dev. Agency*, 274 A.D.2d 651, 710 N.Y.S.2d 709, 711 (3d Dep't 2000) (citation and internal punctuation omitted).

Here, the amended complaint, read as required in connection with a motion to dismiss, alleges that the plaintiff conferred a benefit on the defendant, or that the defendant was enriched, by his work as an employee that is alleged to have increased the defendant's revenues and by his agreement to continue working for the defendant after he had announced that he was going to leave. Complaint ¶¶ 15, 17–19, 21, 23. The defendant does not argue that the alleged bonus has no value and does not cite any authority for its contention that the stock has no value. In any event, the question whether the relief sought by the plaintiff has any value is not one that may be addressed in connection with a motion to dismiss; it is enough that the plaintiff has pleaded the elements of his claim. The question

whether he can prove those elements is more appropriately addressed in a motion for summary judgment.

Contrary to the defendant's remaining argument, the amended complaint does not include allegations from which the only possible conclusion is that the plaintiff breached an agreement to continue working for the defendant through 2002 and therefore may not seek payment of the bonus. Complaint ¶ 23. In addition, the New York opinion cited in support of this argument by the defendant discusses this argument as a defense to a claim based on contract. *Hydraulic Power Co. of Niagara Falls v. Pettebone–Cataract Paper Co.*, 198 A.D. 644, 191 N.Y.S. 12 (4th Dep't 1921). When the absence of a contract is a basic element of the claim, as is the case with the theory of unjust enrichment, it is unclear how this argument applies as a defense. The complaint may reasonably be construed to allege in Count II, as an alternative theory of recovery to that set forth in Count I, that the value of the plaintiff's services to the defendant in 2001 is the total of the compensation paid and the bonus not paid. Under a theory of unjust enrichment, it is irrelevant whether the plaintiff remained employed by the defendant after the benefit was bestowed.

The defendant is not entitled to dismissal of Count II.

### E. Count III

Count III alleges violation of 26 M.R.S.A. § 626, which provides, in relevant part:

An employee leaving employment must be paid in full within a reasonable time after demand at the office of the

---

5. Thus, if the plaintiff recovers the stock on his remaining contractual claim in Count I, he cannot recover its value through Count II. On the other hand, the defendant's argument that Count II must fail because the contract that is the basis of Count I is void, Motion to Dismiss at 11, is unavailing because a claim for unjust enrichment is allowed only when the benefit allegedly conferred is not the subject of an existing contract.

employer where payrolls are kept and wages are paid . . . .

For purposes of this section, the term "employee" means any person who performs services for another in return for compensation, but does not include an independent contractor.

For purposes of this subchapter, a reasonable time means the earlier of either the next day on which employees would regularly be paid or a day not more than 2 weeks after the day on which the demand is made.

\* \* \* \* \* \*

An employer found in violation of this section is liable for the amount of unpaid wages and, in addition, the judgment rendered in favor of the employee . . . must include a reasonable rate of interest, an additional amount equal to twice the amount of those wages as liquidated damages and costs of suit, including a reasonable attorney's fee.

26 M.R.S.A. § 626. The defendant contends that, because the statute of frauds bars any claim for the stock and the bonus, there is no evidence that the plaintiff was entitled to either as "wages" and that the complaint does not allege in any event that any wages are unpaid. Motion to Dismiss at 11.[6]

With respect to the second point, the Law Court has held that commissions are within the scope of the term "wages" as it is used in section 626. *Purdy v. Community Telecomms. Corp.*, 663 A.2d 25, 29 (Me.1995). The Law Court also said in *Purdy* that in creating section 626 "[t]he Legislature indicated no intent to relieve an employer of its statutory obligations when the computations [of the amount due] prove difficult," and that "[t]he employer's obligation is to pay the compensation owed within the time specified by the statute." *Id.* at 28. Given this holding and the Law Court's remarks, I conclude that it is likely that it would hold that promised bonuses and compensation to be paid in forms other than cash are within the scope of the statute.

That said, the plaintiff is nonetheless barred from recovering under section 626 compensation to which he is not otherwise entitled. I have determined that his claim for the bonus is barred by the statute of frauds. Accordingly, he is not entitled to that compensation and may not obtain it through a claim under section 626. The defendant is entitled to dismissal of so much of Count III as seeks recovery of the bonus.

### F. Count IV

Count IV of the amended complaint asserts a claim of promissory estoppel; this count was not included in the initial complaint, which was the only complaint in existence when the defendant filed its motion to dismiss. The defendant seeks dismissal of this count in its reply brief. Defendant's Reply at 5–6. The plaintiff did not seek leave to respond to this argument. Under New York law, the only way in which the plaintiff could recover on such a claim under the circumstances of this case would be to allege a clear and unambiguous promise by the defendant, his reasonable and foreseeable reliance on that promise, and an injury sustained in reliance on the promise as well as sufficient facts to demonstrate that it would be unconscionable to invoke the statute of frauds to bar such a claim. *Fleet Bank v. Pine Knoll Corp.*, 290 A.D.2d 792, 736 N.Y.S.2d 737, 742 (3d Dep't 2002). As

---

**6.** Inexplicably, the defendant cites only New York case law in support of its argument concerning this claim that is raised under a Maine statute. Motion to Dismiss at 11; Defendant's Reply at 7.

noted above, the amended complaint does not reasonably allege unconscionable circumstances with respect to the alleged bonus. A closer question is presented on this element by the alleged promise of stock, but as I have also noted previously, the amended complaint does not allege any injury sustained by the plaintiff's alleged reliance, which the plaintiff identifies as his decision to continue working for the defendant, on that promise. It is for this reason that the amended complaint fails to state a claim on which relief may be granted under Maine law as well. The plaintiff cannot avoid the holding of *Stearns* to the effect that promissory estoppel may not serve as the basis for avoiding the statute of frauds in the context of employment merely by alleging promissory estoppel as the basis of a separate count. *See Daigle Commercial Group, Inc. v. St. Laurent,* 734 A.2d 667, 672 (Me.1999); *Popanz v. Peregrine Corp.,* 710 A.2d 250, 252 (Me. 1998). Accordingly, the plaintiff may not recover the alleged bonus or the stock allegedly promised in 1994 through Count IV. With respect to the stock allegedly promised in 1998, the amended complaint does not allege any detrimental reliance by the plaintiff, a necessary element of the claim. *Struck v. Hackett,* 668 A.2d 411, 420 (Me.1995). The amended complaint alleges only that "Ingram accepted these terms and remained with the Company." Complaint ¶ 18. Ingram does not allege that at the time he chose to remain in the defendant's employ he had a higher-paying job offer that he thereby chose to forego. Nor can he otherwise allege that he would have received the stock if he had left the defendant's employ or that he necessarily would have found work at a higher salary if he had done so. No reasonable inference of a detriment to the plaintiff resulting from his alleged reliance on the 1998 promise of stock can be drawn from the allegations in the amended complaint. Accordingly, the plaintiff has failed to allege a claim for promissory estoppel on which relief may be granted under Maine law.

The defendant is entitled to dismissal of Count IV.

## IV. Conclusion

For the foregoing reasons, I deny the plaintiff's motion to disregard and recommend that the defendant's motion to dismiss be **GRANTED** as to Count IV and those portions of Counts I and III that seek recovery of a bonus or are based on an alleged oral agreement reached in 1994, and otherwise **DENIED**. If the court adopts my recommendation, the following claims set forth in the amended complaint will remain viable: the claim for stock set forth in Count I based on an alleged oral agreement reached in 1998; the claims in Count II; and the claim for stock set forth in Count III.

## NOTICE

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

June 25, 2002.